cases is and has to be, of course, the patent. Here we have two patents. We have the 046 and the 570 patents and they relate to these self-relacing booting operations. Before these boots, and this is right in the patent itself in the background, the officer would identify a scofflaw vehicle, boot it, and then the vehicle operator would have to find their way with alternate transportation to wherever they have to pay the fine and find additional transportation back and then sit and wait for the officer to come and unlock these boots. These inventions changed all that. Now you boot the vehicle. The boot itself is different. It's a coded boot. They're not the keys locked. Key locked boots. And now all the vehicle operator needs to do, call up, pay the fine, give it a deposit over the phone. In exchange, you get the code of the boot. You plug it into the boot, take the boot off the wheel, throw it in the trunk, and return the boot, get your deposit back at your convenience. We know Section 101 and what it says is patent-eligible subject matter. And it includes any new and useful process, manufacture, composition of matter, and machine, or new and useful improvements. We also know now from decades of case law that there's an exception. The exception, one of the exceptions, is for abstract. The now familiar Mayo-Allis steps, the first step, we look at whether... Are you going mainly on Step 1 or Step 2? Are you claiming... Actually, I think it should end on Step 1, Your Honor. I'll talk about Step 2, but I think Step 1, it should end. Step 1 looks at whether or not, of course, the focus... Step 1 focuses on the means and the manner in which they achieve their goals. It has to be something focused on a specific means or method rather than focusing the claims as a whole, focusing on the general result, the general idea itself. These claims are not directed to an abstract idea. They all recite very specific means and method of achieving this. And at the center of every one of these claims is a specific, novel, mechanical device. It's a vehicular boot that doesn't rely on the keys of the old... Why isn't the claim directed to the vehicular boot then? I mean, even if you're right, why is that not a Step 2 case? Because it sounds like what you're saying is the claim is directed to this novel boot, which you don't even see until, I think, near the end of the claim. And so why isn't there an abstract idea, and then you're relying on Step 2, I guess, by saying that you've got a novel boot? Well, Your Honor, it depends which claim you're looking at and where that boot comes in, but I think it's really both. And the courts do recognize and correctly so that there is a bit of overlap between these steps. But in my view, the first approach is to look at this and see if... Do these claims just say, look, self-release booting, go ahead and find a way to apply it? Or do they say, this is the means for doing it, this is the method for doing it? And these claims do the latter. What exactly is the novel part about the boot? There's never been a vehicular boot with a coded vehicular lock before. A coded lock. There's no vehicular boot with a coded lock. There were keys before. There were keys before. So respectfully, we'll get into this in Step 2. But a coded lock, I mean, those are not inventive steps, right? Coded locks... I mean, are you saying coded locks are a new invention, or are you saying using them for this purpose is a new invention? I'm saying that the vehicular boot with a coded lock was new and never been done before. And so, now, if there's skepticism, Your Honour, about the coded locks, that skepticism respectfully belongs under a different statute. The question that we face here in the Alice context is, was this conventional? Was it conventional to have a vehicular boot with a coded lock? Well, it can't be conventional if it's never been done before. Conventional means something that's commonplace. That's what the word conventional means. Your view is that whether something's abstract requires us to look at whether something was conventional? Well, we got sidetracked to the second... What do you think the test is that we are supposed to apply when we're asked to identify whether the claim is directed to an abstract idea? The test is whether or not, and this is, I'll take it right from the micro case, whether the claims focus on a specific means or method, and this is step one, whether the claims focus on a specific means or method, or whether they're directed to the abstract concept itself. That's the test. And there is a specific means. There's this novel, mechanical, specific boot in the center of all these claims, and there's a specific method. All these claims talk about how you go about to use that boot. So the test under step one, is it focused on a specific means and method? Yes, of course it does. It's a very specific means and method. So respectfully, Your Honor, I don't think that this gets past step one. How do you define the... How did the court below define the abstract idea? Pardon me? How did the court below define the abstract idea? I mean, a lot of it requires consideration of if there is an abstract idea, how do you define it? Yes, Your Honor. Well, what the district court did below is it just said, look, all we're doing is just following the trend of self-service. And so we're just following the trend of self-service. So the district court said, the abstract idea here for all these claims is just self-service in the vehicular booting. I'm paraphrasing, of course, but that's basically what the district court did. And that was vastly oversimplifying these claims. That's just vastly oversimplifying them. It's ignoring the novel mechanical structure that's in the center of all the claims. Are you familiar with our case in SMART, a case called SMART Systems Innovations? Your Honor, there's a lot of cases. I know. This is the one with the paying for a subway or metro card. Oh, yeah, that's recent. With the credit card. That's quite recent. I think it's pretty close to this case, in my view. So I wonder if you're familiar with the case.  I know there are a lot of cases out there, and this is recent. But if you could tell me why you think this is distinguishable. I think it's different, because here we have a novel, specific mechanical device. There was no such thing that, as I recall that case, it was just basically you were able to swipe for the Chicago Transit through a credit card. And they found you were able to use your credit card. So you're talking about a step two differentiation, not a step one. It could be, Your Honor. It could be. I mean, I've said my piece about a step one, but it could be a step two differentiator. But ultimately, it comes down to this. I mean, if these claims were a little different, well, significantly different, but if they were different in the sense that they said, we claim a vehicular boot with a coded lock for the vehicles of scofflaws, we wouldn't be having this conversation. No one would say that's abstract. And respectfully, that result doesn't change just because you put that apparatus in the middle of a step for process for its use. I think another great way to look at this under step two as well is a machine or transformation test. I mean, we know that's not the sole test. We know that under Bilski. But Bilski also said that the machine or transformation test is an investigative tool, and it's a useful tool, and it's an important tool. So if we employ that important tool here, where does it get us? It leads us directly to the result that this is not abstract. All these claims are inextricably tied to a new apparatus. It's not an apparatus in the sense that so many cases try to say where, you know, yeah, we got an apparatus, it's a computer. It's not tied to a computer or a PDA. It's tied to a specific new mechanical structure that's never been done before. Bilski leads to the conclusion these are not abstract. They truly aren't. What the district court said was, and we're on step two now, what the district court said is, and in step two, of course, you look to each individual limitation as well as the ordered combination. And what the district court said was just commercially available, conventional stuff. That was just factually wrong. It's just factually wrong. You can't go down to the local Walmart and pick up a vehicular boot with a coded lock. It's just not correct. Same as the district court's conclusion that this was conventional. No one's ever, certainly nothing in this record, no one's ever used a vehicular boot with a coded lock so that the people who own the vehicle can remove it themselves.  You can't say something's conventional. It's a combination of those two things. Yes. And, Your Honour, if there's skepticism, I said this before, but if there's skepticism about that, about whether or not it would be obvious or not to combine those two things, I really think that that belongs, that skepticism belongs under a different statute. If we're going to step onto that path and say, okay, you came up with a new device and you combine these two things in the art but it's still conventional, that's a very slippery slope. I mean, the next person that comes up here to this podium for the analysis issue and they have a new mechanical device that's never been done before, maybe they combine three elements or four or ten. You can't say it's conventional if it's never been done before. This is something very different from all these cases that have PDAs and computers and all they're doing is taking stuff that's been done before and saying, look, we're throwing a computer at it. Does your patent specification emphasize the novel, unconventional nature of the lock, the boot having this release code? I don't remember. It says that it distinguishes the prior boots. I know that, Your Honour, and I do believe that there's... Do you know where that's at? It would be in the background section. I think maybe the 570, but you're testing my memory, Your Honour. But I'm sorry to flip this around, but really the way to look at this is we have to flip it around. Is there anything in this record or in the patents or anything else saying it was conventional to have a vehicular boot with a coded lock? And no, so there's nothing here, especially on a 12C motion. That's a factual determination the district court made and it was just factually wrong. You can't say something's conventional that's never been done before. So, respectfully, we've talked about some of the cases. I've read countless cases preparing for this. It's impossible to keep them all straight, but I can tell you one thing. I don't remember seeing any case where you had a novel, mechanical structure in a claim and any court saying that that's abstract. It's a mechanical boot with a code. You hold it in your hand. There's absolutely nothing there. There's nothing abstract about that. So I just have 15 seconds. I'll talk about the presumption very briefly, but I don't think we should even get there. We need to get there because this factual determination shouldn't be here. 282 says patents are presumed valid. Period. That should be the end all, be all. Courts interpret statutes.  Unless there are questions, I'll reserve you. Thank you. Thank you. Thank you. Initially, I thought I might just very briefly mention that when the city of New Orleans asked SP Plus to provide this self-relief service, SP Plus went out and purchased, I think it was 108 Titan Grip boots, which are patented. That fact alone is not relevant, but I just wanted to mention the background because it's something that we obtained. Certainly different from the boot, the apparatus that Paylock uses. And I just mention that because in getting to know this case, it was just questions that I naturally had. In other words, I think as the court may have noticed,  and the Titan Grip boots that SP Plus went out and obtained in order to fill the request by the city, remind me of the bike lock that I had when I was a boy, where you turn the bolts in order to get to a code. Yeah, but your friend is saying you take, okay, the boots are in the prior art and the lock is in the prior art, but the combination of the two is embedded. Yes. Yes, Judge. And I just mentioned that background because I was learning about it. I also wanted to mention, and because I think it's consistent with what the 046 patent says, and I'm reading it Appendix 53 from the record, and this is down under background, quote, background of the invention. Did you say Appendix Page 53? 53, Appendix 53. I think you're looking at reading Column 2? I'm in Column 1. Of the 046 patent. Yes, Judge. As in that Appendix Page 60. Judge, I apologize if I've said it wrong. I just want to make sure I'm on the right page. Yeah, maybe it's because of the two different appeal numbers. On appeal 2151, Judge. That might be it. Okay, thank you. It wouldn't be the first time I've cited something wrong, but I thought I'd just mention it because I think it went to one of your colleagues' questions. Again, what I have in front of me is Appendix 53, and if everything's right, I'm looking in the left-hand column under number 1, and background of the invention. Third paragraph, starting one solution, and I'll fast-forward for the sake of time to the third sentence, which says, the second sentence says, such a boot is a device which is attached to a vehicle to make operation of the vehicle impossible since the wheel is no longer able to roll. Third sentence, such boots are commonly used and widely available, period. Such boots are typically cumbersome and heavy, period. For example, such boots are disclosed in Japanese patent, and there's a number listed there, all incorporated by reference. I mention that because I think the court asked and tried to understand this and how unique the claim is here. I have a question, though. That seems to be just talking about a regular boot. That passage you recited isn't talking about a locking boot with a boot release code, is it? I believe it's talking about a locking boot, Judge, and does it discuss a release code? No, it doesn't. But I think all boots are meant to be unlocked. And if I understand correctly, what you're saying... No boot is permanent. Could I ask you a question? Yes, Judge, sorry. I think that you were referencing what you had purchased when you were trying to fulfill the contract. Yes, for sure. And I think you said, if I understand correctly, it was a locking boot with, like, a... what you would find on a middle school or high school combination lock? Is that what you were describing? I was trying to describe that for the court. Okay, thank you. Which is what SP Plus utilizes in its operations before it ceased doing this. Is there any evidence in the record of a locking boot with a boot release code other than what... at all? I guess other than what you mentioned, is there anything in the record talking about how locking boots with boot release codes were available or conventional? No, I just... we did cite into the record and support with the affidavits how we fulfilled the contract and how we got there, which was what I was trying to explain for the court. Is that in the record before us today? I believe it's in the trial court record in terms of the filings that we made before with the motion, the Rule 12 motion we made with the district court. I can't provide a citation at the moment, but that should be in the record, because it's part of what we provided to the district court in terms of the supported background. Do you have a particular page number in the appendix right now? Before we leave, my colleague who knows things better than I do, we're looking right now, but I believe it should be there, Judge. You know, the court asked a little bit about the Step 1 under Alice and the question of whether we're looking at something that's not an abstract idea. And I think, again, this court's precedents have talked about basic and long-standing business practices and long-standing commercial practices as the types of things that don't satisfy the Step 1 analysis. Part of the claim that the district court looked at was the question about someone making a deposit on the boot and the fact that it could change its locks. Long-standing business practices, whether on library books that are borrowed or on a canoe that's taken or on other devices. Those types of things are things that businesses have been using for generations. I know that counsel is focused on this apparatus, but I think it goes to the point that they've identified no way that using a lock, excuse me, using an apparatus, although ours is different, somehow transforms this into an improvement. And I think one of the key holdings of Alice is obviously that the use of generic computer technology doesn't transform otherwise ineligible material into eligible patent material. And so our point on that was that under Step 1, these long-standing business practices are the type of abstract ideas that don't qualify for protection. But fast-forwarding to Step 2, we don't have anything that improves technology, as this Court has looked at. And I think NRA TLI communications by this Court looks at that. The fact that something may make a process more efficient doesn't meet the Step 2 test. The fact that something may save time doesn't mean that that's an improvement on technology. What we're really using here is the type of technology or a process that men could use with pen and paper, and this Court has spoken on that before, that when you're dealing with a process that can, and certainly in the past could have been done with pen and paper, then that shows that it's likely not going to satisfy at least the Step 1 test. On the Step 2, on the Step 2, the fact that we've got something with this apparatus is certainly not a technology improvement. There's no software that improves. There's no computer program that has become inventive or novel or different in order to satisfy this Court's test. One of the areas that the Supreme Court initially was involved with and we cover in some but not all of our cases is this issue of preemption. And there's no real issue of preemption in this case, if you're right. I mean, this invention has a very, very narrow lane that wouldn't foreclose others from doing other things, right? I believe that's correct. We certainly received a cease and desist letter and subsequent demands that said we can't enter self-release booting at all anywhere. And that was only an issue in obviously New Orleans. But I think the answer is yes. It's narrow in that sense, Judge, just to be clear that it wasn't using any particular type of boot or it wasn't. In fact, we asked questions about that when we first received the cease and desist letter and before we filed the action claiming invalidity and non-infringement was what exactly is it that the claim or your position that the claim would prevent? And it's any and all self-release booting, which is why we filed the action in the Eastern District. I'm going to cite to an answer to Judge Stoll's, your question earlier, appendix two and footnote two. Excuse me, footnote one. I apologize. Page two, footnote one that discusses SP Plus acquiring the Titan Grip boots that we were talking about earlier and that I brought up, not to confuse or make an issue but just explain a little bit about the background when I heard how unique the apparatus was. That apparatus may be unique but it's certainly different than the apparatus that SP Plus has been using pursuant to the city's request. Also appendix twenty-eight, which I think addresses the District Court's comments and that's specifically footnote ten that discusses the idea of the technology to effectuate the abstract idea of self-release booting and I'm sure the Court's seen it but that's appendix twenty-eight, which also went to the Court's questions about this abstract idea and whether that satisfied the step two analysis. At the end of the day, I think when you look at what this Court has said in the content extraction case, the fact that you're using or collecting data is all fine but that's certainly not something to get past the abstract idea exception and if we look at the TLI communications again, Your Honor mentioned rightly so, there are many decisions out there and I can't cite them all back but I think those are settled decisions from this Court that show that you have to show something more than just a process, certainly a process that businesses and others have been utilizing for decades if not generations. The first cite that you gave me doesn't say anything about how the Titan grip boots work at all. Do you have anything else that's better that talks about them? It just says that you acquired them. That's correct, Judge. It doesn't have the patent number in there. And it doesn't say that they have self-release or anything else or how the self-release works? No, I just want to address Your Honor's question, was there evidence in the record that we had acquired these boots? I really was more interested in the self-release mechanism. I'm sorry, Judge. But this is the best cite you've got. This is the best cite I have right now. Yes, Judge. I believe when we look at the Supreme Court's decision analysis and what it's cautioned then the consistent decisions from this Court about making sure that we go somewhere more, make sure that we have something more than just an abstract idea and something that's really novel or it has an inventive concept. And that's been a touchstone, I think, of this Court's decisions that we don't have that here. What we have is a telephone call in to get a boot released so that someone can save time. And that's certainly laudable that the city wanted it and asked for it. But that's not an invention or enough to give a monopoly over this whole process nationwide. And that's certainly something that we've been struggling with here in terms of the demands that we received. That wouldn't be a Section 101 issue. There were other aspects, other provisions, other potential grounds of concern. I'm thinking of the proposed reissue, for example. I'm not really sure what to do about that. But was Section 101 the emphasis, the focus of the argument? It was, Your Honor. Section 101 was. You're talking about in the district court below? Yes. Yes, Judge, it was. We asserted that patents were invalid. That was the only focus? That was the focus at the district court below, Judge. I think it's also worth noting when we talk about whether this is something novel or that there's truly been an invention, something, an abstract idea, it's worth noting that when we received the cease and desist letter, we've been able to provide services without any self-release boot or mechanism. And what we've done is what we've always done, which is had someone go and release the boot. And I think any boot is meant to be temporary, not permanent. And our employees have been doing that since then. But I mention that because those are the types of conventional processes that we've always had. To say that merely by being able to call in and receive the lock on the boot, that it doesn't transform this into a, quote, technological improvement or an inventive concept or something that would satisfy what this court and the Supreme Court said need to pass muster in order to create a Section 101, valid Section 101. And so I think when we look at the wealth of decisions from this court, including the ones that the court cited from even since our briefs were filed, the Simple Solutions case, I think that this certainly falls within it. I know it's de novo review, but I think that this case was correctly decided by the District Court, who fairly thoroughly analyzed it, all aspects of it, in his written ruling. So we would ask that this court affirm under its precedence and that of the Supreme Court. Thank you. Thank you. I'll be very brief. I think Judge Stoll asked the $50,000 question here, which was, is there any record evidence of a boot with a release code? The answer is no. This is a new physical combination. It's a technology that did not previously exist. So under the Machiner Transformation Test, which the Supreme Court called an important test, and gives us an important clue, these claims are all inextricably tied to this specific, novel, new mechanical device. And respectfully, they're patent eligible. If there are no further questions. Thank you. Thank you.